### In re CONRAD.

(Supreme Court, Appellate Division, First Department.   March 7, 1913.)

PHYSICIANS AND SURGEONS (§ 11*)—REGISTRATION OF PHYSICIAN—CLERKS OF COURTS—JURISDICTION OF SUPREME COURT—NONJUDICIAL DUTIES.

The Supreme Court has no authority to require the clerk of a County Court to interfere with a record which he is required to keep as a public officer of the county, and not in his capacity as clerk of the Supreme Court, unless it acquires such jurisdiction in a legal proceeding, or by express statutory authority, so that it has no authority to require upon summary application the clerk of a County Court to cancel and set aside a certificate of annulment of registration as a physician and surgeon filed by him pursuant to Laws 1907, c. 344, § 11, subd. "e," upon transmission from the state Board of Regents, the county clerk not acting in the capacity of a clerk of the Supreme Court in filing such certificate.

[Ed. Note.—For other cases, see Physicians and Surgeons, Cent. Dig. § 15;   Dec. Dig. § 11.*]

Appeal from Special Term, New York County.

In the matter of the application of Edward E. Conrad. From an order of the Special Term setting aside and annulling a certificate of the Board of Regents, and the revocation of a physician's license, the Board of Regents of the University of the State of New York appeals.   Reversed, and application dismissed.

Appeal by the Board of Regents of the University of the State of New York from an order of the Special Term vacating, canceling, and setting aside a certificate signed by the first assistant commissioner of education of the department of education of the state of New York, under date of April 12, 1909, and under the seal of the University of the state, addressed to the county clerk of the county of New York and filed in his office on the 13th day of the same month, described in the order as a certificate of said Board of Regents, certifying, in effect, that said board at a meeting duly held by it on the 1st day of April, 1909, on the unanimous recommendation of a committee duly appointed by the board of medical examiners of the state of New York pursuant to the provisions of section 11, subd. e, c. 344, Laws 1907, revoked the license of the petitioner to practice medicine, and annulled the regulation thereof in the office of the clerk of the county of New York, and ordering the county clerk to indorse on said certificate the words, "Annulled and revoked by order of court," and to cancel and erase the word "annulled" on the record of the registration of the petitioner, Edward E. Conrad, as a physician and surgeon, kept in said county clerk's office as required by law.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Almuth C. Vandiver, of New York City (J. Joseph Lilly, of New York City, on the brief), for appellant.

Asa Bird Gardiner, of New York City, for respondent.

LAUGHLIN, J.   The application for the order was made on notice to the Board of Regents, subscribed by the attorney for the petitioner, which notice is entitled, "In the Matter of the Application of Edward E. Conrad, Petitioner," as if it were a special proceeding, and Conrad is described in the notice as the petitioner, and the affidavit

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

annexed thereto is entitled in the same manner. It is not addressed to, nor does it appear to have been served upon, the county clerk.

It appears that on the 14th day of September, 1889, the petitioner was duly licensed to practice medicine in the county of New York, and his license was duly registered on that day in the office of the clerk of the county of New York, as required by law. On the 8th day of April, 1904, he was duly convicted of the crime of attempted abortion, which is a felony, in the Court of General Sessions for the county of New York, and sentenced to not less than one year and not more than two years in the state prison. The record of conviction shows that he had been theretofore convicted in the Court of Special Sessions of "keeping lying-in hospital without a license." After serving 16½ months at Sing Sing, he was paroled, and on July 5, 1906, finally discharged.

At the time the petitioner was last convicted, section 140 of the Public Health Law (chapter 661, Laws of 1893) provided, among other things, that no person should practice medicine "who has ever been convicted of a felony by any court, or whose authority to practice is suspended or revoked by the regents on recommendation of a state board." It was provided by chapter 647, § 6, Laws 1887, which was in force when the petitioner was licensed to practice, that the conviction of a felony by any court of competent jurisdiction revoked the license of a physician and surgeon; but this was repealed when the Public Health Law was enacted. Chapter 661, § 209, Laws of 1893. The Public Health Law, in so far as it relates to and regulates the practice of medicine, as it existed at the time of the last conviction of the petitioner, was repealed by section 16 of chapter 344 of the Laws of 1907, which took effect on the 13th day of May of that year, and, in so far as it affects this appeal, it is sufficient to say that the provisions of the Public Health Law were re-enacted with certain changes and additions. The new provisions conferred authority on the Board of Regents, among other things, to "revoke the license of a practitioner of medicine, or annul his registration, or do both," where the practitioner "is guilty of a crime or misdemeanor," or "where he undertakes or engages in any manner or by any ways or means whatsoever, to procure or perform any criminal abortion as the same is defined by section two hundred and ninety-four of the Penal Code"; and they regulate the proceedings for the revocation of the license and the annulment of the registration, and provide that they shall be begun by filing written charges, preferred by any person or corporation, or by the executive officer of the Board of Regents. Chapter 344, § 11, Laws 1907. It was further provided therein that the charges should be filed with the executive officer of the Board of Regents, and a copy thereof filed with the secretary of the Board of Medical Examiners, and that the latter board should thereupon designate a committee of three of their number to hear and determine the same. The committee was required to fix a time and place for the hearing, and to serve a copy of the charges and notice of the time and place of the hearing upon the accused personally or his counsel at least 10 days in advance of the hearing; and provision was also made

for service by publication when necessary. It was further provided that the accused should have the right to appear personally or by counsel and to cross-examine witnesses against him, and to produce witnesses in his behalf, and that the committee should make a written report of its findings and recommendations to be signed by all its members, and should forthwith transmit the same to the executive officer of the Board of Regents, and that, if the committee should unanimously find any of the charges sustained and unanimously recommend that the license be revoked or the registration be annulled, the statute provided that "the regents may thereupon in their discretion, revoke said license or annul said registration, or do both," and, if the registration should be annulled, the Board of Regents was required to forthwith transmit to the clerk of the county or counties in which the accused was registered as a physician and surgeon a certificate under their seal, certifying that the registration "has been annulled," and it became the mandatory duty of the county clerk under the statute on the receipt of such certificate to file the same, and forthwith to mark the registration "Annulled." The Legislature further declared by this statute that any person practicing medicine, after his registration shall have been marked "Annulled" pursuant thereto, shall be deemed to have practiced medicine without registration. Authority was conferred upon the Board of Regents, after the expiration of one year from such annulment, to entertain an application for a new license, and in their discretion to exempt the applicant from the necessity of undergoing any examination.

Prior to the 3d day of December, 1908, the Medical Society of the County of New York, a domestic membership corporation, applied to the Board of Regents of the University of the State of New York for the revocation of the license of the petitioner to practice medicine, and for the annulment of the registration of his license, on a petition duly verified based upon the indictment, conviction, and sentence of the petitioner for the crime of an attempt to commit an abortion, and the petition was filed with the executive officer of the Board of Regents, and a copy thereof was filed in the office of the Secretary of the State Board of Medical Examiners. On the 3d day of December, 1908, the petitioner was duly served with notice of the time and place a committee, duly appointed by the State Board of Medical Examiners, would hear the charges, and with a copy of the charges; and on the return day he appeared by counsel, and interposed no defense or objection to the granting of the prayer of the petition. Thereafter, at a final meeting of the committee held on the 10th day of March, 1909, a resolution was unanimously adopted recommending to the Regents that the application of the Medical Society of the County of New York for the revocation of the petitioner's license and for the annulment of the registration thereof be granted; and on the 1st day of April thereafter the Board of Regents, acting on said recommendation, revoked the license and registration, and caused the fact to be certified to the clerk of the county of New York on the 12th day of April by the first assistant commissioner of education of the department of education of the state of New York, and it was received and

filed by the county clerk on the next day, who, acting pursuant to the provisions of the statute, thereupon marked the registration of the petitioner's license to practice medicine "Annulled."

On the 31st day of March, 1911, the Governor duly issued a pardon to the petitioner, and a certified copy of the pardon was filed with the Board of Regents on the 23d day of June, 1911; but the board took no action thereon.

The learned counsel for the petitioner contends that the pardon had the effect of restoring to his client the right to practice medicine; but he concedes that the effect of the pardon is not presented for adjudication by this application, and manifestly the court is not required on this appeal, either to construe the pardon or to declare its effect. The petitioner, so far as the record shows, has made no attempt to obtain the relief which he asks on this application either by certiorari or mandamus, or by a suit in equity. Without expressing any opinion with respect to the regularity or validity of the action taken under the statute with a view to annulling the license of the petitioner to practice medicine and the registration thereof, or as to whether he had, or has, any remedy by which his right to practice medicine may be authoritatively determined before he attempts to practice and thus subjects himself to prosecution, we are of opinion that the court was without jurisdiction, on mere petition or motion, to grant the relief for which the application was made.

The Supreme Court has no authority upon a summary application over the county clerk, excepting in so far as he acts under the Constitution and law as clerk of the court; and manifestly in filing the certificate of annulment and marking the registration of the license as required by the statute he was not acting as clerk of the court. The Constitution (article 6, § 19) provides that the clerks of the several counties "shall be clerks of the Supreme Court, with such powers and duties as shall be prescribed by law." The provisions of the statute to which reference has been made, requiring the county clerk to file the certificate and mark the registration, were enacted pursuant to authority conferred upon the Legislature by the Constitution to impose duties upon the county clerk, other than those required of him as clerk of the Supreme Court. The Supreme Court has no jurisdiction or authority over the county clerk, by which it can require him to mark or otherwise interfere with a record which he is required by statute to make or keep, not in his capacity as clerk of the court, but as a public officer of the county, excepting in so far as it acquires jurisdiction by some action or legal proceeding known to the law, or by express authority from the Legislature. Matter of Coss, 144 App. Div. 832, 129 N. Y. Supp. 425, appeal dismissed 204 N. Y. 662, 97 N. E. 1103; Matter of Petition of Livingston, 34 N. Y. 555; Matter of King, 42 Hun, 607. See, also, Matter of Black, 150 App. Div. 532, 135 N. Y. Supp. 504. No act of the Legislature has been cited, and we have found none, conferring authority on the court thus summarily to order the county clerk to cancel the certificate of the Board of Regents and the annulment of the registration of the petitioner's license to practice. Here no action, or special proceeding, or legal proceeding known to

the law, has been instituted. The petitioner merely applied to the court for the relief on notice to the Board of Regents only.

For the reasons stated, the court acquired no jurisdiction by such application to grant the relief, and the order should therefore be reversed, with $10 costs and disbursements, and the application dismissed without costs. All concur.