PUBLIC EMPLOYEES SALARIES NOT CONFIDENTIAL Teacher contracts, employee payroll claims, or any other public record reflecting the exact salaries of public school teachers and other public employees, are subject to the provisions of 51 O.S. 24 [51-24] (1971), and therefore are required to be kept open for public inspection. The Attorney General has received your request for an opinion wherein you ask the following question: "Does the public have a right to know the exact salaries of public school teachers and other public employees, or, are the salaries of public employees considered confidential information ?" Initially it should be noted that the term public employee is treated herein as being synonymous with an employee of the State or one of its subdivisions, and the scope of this opinion is limited accordingly. Title 70 O.S. 6-101 [70-6-101] (1971), pertaining to teacher contracts, provides in pertinent part as follows: "Except as provided in subsection E of this section, no person shall be permitted to teach in any school district of the state without a written contract, except as provided herein for substitute teachers and except teachers of classes in adult education. The board of education of each school district, wherein school is expected to be conducted for the ensuing year, shall employ and contract in writing with qualified teachers for and in the name of the district. One copy of the contract shall be filed with the clerk of the board of education and one copy shall be retained by the teacher, and if the contract is with a dependent school district one copy shall be filed with the county superintendent of schools. C. It shall be the duty of the county superintendent of schools and the district superintendent of schools under whose supervision teachers have been contracted to teach to certify to the treasurer of the contracting district the names of the teachers holding valid certificates with whom contracts have been made and the names of substitute teachers employed in accordance with law. Said treasurer shall not register any warrant issued in payment of salary to any teacher whose name is not included in such list and shall be liable on his official bond for the amount of any warrant registered in violation of the provisions of this section." (Emphasis added.) Under this statute it is obvious that individual teacher contracts are a matter of public record and must be treated accordingly. In addition, 62 O.S. 41.17 [62-41.17] (1971), pertaining to claims and payrolls, provides in part as follows: "The State Budget Director is hereby authorized to revise and prescribe the blank claim forms and payroll forms to be used by the various agencies of the State . . . Payroll forms are hereby authorized for use in claiming amounts due individually to all employees within a department, board, commission, institution or agency of the State when the bonded executive head or bonded employee of such spending agency certifies on the payroll form that the amount shown after each named employee is the amount due for the period of time shown on the payroll form. Each payroll form shall show in separate columns the total earnings, the amount of each type of withholding and the net amount due each employee . . ." In addition, 62 O.S. 304.1 [62-304.1] (1971), also pertaining to payroll claims, provides in pertinent part as follows: "The regular personnel of any agency of any county, city, town, school district or board of education, in this State, may be certified to the governing board thereof for payment on a pay-roll claim form, and filed with the clerk thereof as are other claims, in the manner herein provided. "By such a payroll claim, the duly elected or appointed head of any department, office, suboffice, district, station, or school, may execute, on behalf of himself and his subordinates, a statement of earnings, itemizing in detail the names of such persons with the address of each, nature of employment or service, rate of pay each, amount due each, and dates of service within the pay-roll period if less than a full pay-roll period; and such claim shall be verified by affidavit under oath as to: (1) authority to execute same under this Act; (2) subordinate relationship of all persons named, other than himself, to the affiant; (3) record or contract relationship of all persons named to the governing board; and (4) services performed under direct supervision." Under the above-cited statutory provisions pertaining to public finance and teacher contracts, it is obvious that the salaries paid to all employees of the State of Oklahoma are required to be set forth in some detail upon payroll claims prior to such employees receiving their salary or wages. It is thus apparent that the payroll claims reflecting such salaries, as well as the individual teacher contracts, are a matter of public record and subject to the provisions of 51 O.S. 24 [51-24] (1971), entitled "Records Open for Public Inspection". This Section is commonly referred to as the Public Record Law and reads as follows: "It is hereby made the duty of every public official of the State of Oklahoma, and of its sub-divisions, who are required by law to keep public records pertaining to their said offices, to keep the same open for public inspections for proper purposes, at proper times and in proper manner, to the citizens and taxpayers of this State, and its sub-divisions, during all business hours of the day; provided, however, the provisions of this act shall not apply to Income Tax Returns filed with the Oklahoma Tax Commission, or other records required by law to be kept secret." This section was originally enacted by the Nineteenth (19th) Oklahoma Legislature in 1943, pursuant to Senate Bill 143, entitled "An Act Relating to Inspection of Public Records; and Declaring an Emergency." Subsequent to its adoption, 51 O.S. 24 [51-24], has been construed by the Office of the Attorney General on numerous occasions, among the earliest of which was an opinion issued on April 8, 1944, to the Executive Secretary of the Teachers' Retirement System, and containing the following language ". . . We fail to find any provisions thereof which make the statements made by the teachers, or members, on the form of information blank referred to by you in your letter confidential or secret, and we believe that when these statements are filed with the Board of Trustees they become part of the records of the said Board and thus are public records and open to public inspection." On December 5, 1944, the Oklahoma Supreme Court in the case of State v. Nix, 155 P.2d 983, discussed the right of citizens and taxpayers to personally inspect and examine documents filed with the County Clerk. In this case the court did not cite or discuss 51 O.S. 24 [51-24], but reached a conclusion compatible with the statute upon public policy grounds. In its Syllabus the court stated: "Generally, absent statute to the contrary, citizens and taxpayers of the county and their accredited representatives are entitled to examine the originals of claims filed against the county and reposing in the custody of the county clerk, upon reasonable request, in a proper manner and under such supervision and surveillance of the clerk as to reasonably insure their preservation as public records." The body of the decision contained the following language — "Our statutes and former decisions disclose the public policy of this state as allowing the citizen and taxpayer much latitude in inquiring into the conduct of the fiscal affairs of his government and in appealing to the courts in such matters." In the many opinions issued subsequent to the April 8, 1944, opinion and the Supreme Court ruling in State v. Nix, supra, the Attorney General has consistently interpreted the law so as to give vitality to its stated purpose of allowing free and open public access to public records. A graphic example of this approach is found in the companion opinions issued on June 19, 1953, to the Department of Public Welfare, and July 10, 1953, to the Speaker of the House of Representatives. In these opinions the Attorney General discussed the effect of a statute pertaining to the monthly warrant register, which statute made it unlawful for any public officer or employee to furnish or permit to be taken off of the warrant register any information for commercial or political purposes. In these opinions the Attorney General strictly construed this statute, finding it did not render the warrant register confidential, and thus a public record available for public inspection. This result was found to be in accordance with the provisions and intent of 51 O.S. 24 [51-24], and State v. Nix, supra. On August 9, 1956, an opinion was issued to the Oklahoma Emergency Relief Board which found that, even though there was no statute requiring the Board to maintain as a part of its official records the applications which were sought to be viewed by certain newspaper reporters, the applications were nonetheless public records. This opinion contained the following language: "However, it is not always necessary for an officer to be specifically required by statute to keep records in order for him to have such a duty. 45 Am.Jur., Records and Recording Laws, 2, P. 420, is as follows: "It is said that a public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done. In all instances where by law or regulation a document is filed in a public office and required to be kept there, it is of a public nature, but this is not quite inclusive of all that may be properly considered public records. For whenever a written record of the transactions of a public officer in his office is a convenient and appropriate mode of discharging the duties of his office, it is not only his right, but his duty, to keep that memorial, whether expressly required so to do or not; and when kept it becomes a public document which belongs to the office rather than to the officer. What is a public record is a question of law." (Emphasis supplied.) "Of course, a written record of the applications for aid and assistance (General Relief) is a convenient and appropriate mode of preserving a memorial of official transactions of the Emergency Relief Board. If for no other reason, the Board (through its Administrator) has the duty of maintaining sufficient records to make possible an audit of its official financial transactions. The application for aid and assistance (General Relief) is a necessary and proper portion of such records. We are not familiar with any statute requiring those records to be kept secret." This opinion also contains the following statement: "The rule generally applied to public records, in the absence of a statute requiring them to be kept secret, is that citizens and taxpayers have the right to inspect public documents and records. 45 Am.Jur., Records and Recording Law, 18, p. 428. This is the rule we think is applicable here." In 1 Okl.Op.A.G. 85 (No. 68-156), issued on April 11, 1968, to the Commissioner of the State Insurance Fund, the Attorney General again had occasion to consider the effect of a statute specifically rendering certain information confidential, upon the Public Records Law. This opinion reached the following conclusion: "Therefore, it is the opinion of the Attorney General that the warrant register showing checks issued on workmen's compensation claims by the State Insurance Fund is open to public inspection with or without permission of the Commissioner of the State Insurance Fund, since it does not represent information acquired by the Commissioner for persons, firms or corporations insured in the State Insurance Fund as provided in 85 O.S. 147 [85-147] (1961)." On July 18, 1972, the Attorney General, citing the Public Records Law, rendered 5 Okl.Op.A.G. 164 (No. 72-194) regarding the Department of Public Safety and containing the following language: "There is no statute which requires the index of licenses revoked or suspended maintained by the Department to be kept confidential. It must be concluded that these records are open to the public for inspection, or as stated above, available upon request at a charge of $1 per sheet." The most recent opinion of the Attorney General regarding the Public Records Law was Opinion No. 75-218, issued on October 21, 1975. In this opinion addressed to the President Pro Tempore of the Oklahoma State Senate, the Attorney General reached the following conclusions: "It is not necessary for a citizen to make an appointment with an agency in order to inspect public records. Whether an inspection is for improper purposes would depend upon the circumstances of the situation. Anything that is prohibited by law would obviously not be a proper purpose. An agency does not have the right to limit access to any public record in absence of statutory authority. An agency may limit access to its records to the business hours of the day. A citizen requesting to inspect the public records should be allowed to do so as soon as it is reasonably possible under the circumstances." Thus, it can be seen that in Oklahoma all public records, other than those which have been specifically denominated by the Legislature as confidential or secret, have consistently been determined to be open to public inspection. Inasmuch as there is no statutory or other authority purporting to render confidential the salaries of public school teachers and other public employees, but on the contrary, such salaries as set forth in the individual teacher contracts or reflected on payroll claims constitute a part of the public record, it is apparent that such salaries are a part of the public domain. It should be noted that there may well be public records other than teacher contracts and employee payroll claims wherein public employees salaries appear, and thus become available for public inspection, e.g. minutes of a meeting of a school board or public agency where employees salaries are discussed. It is, therefore, the opinion of the Attorney General that your question be answered as follows: Teacher contracts, employee payroll claims, or any other public record reflecting the exact salaries of public school teachers and other public employees, are subject to the provisions of 51 O.S. 24 [51-24] (1971), and therefore are required to be kept open for public inspection. (James R. Barnett) (ED NOTE: Now, 51 O.S. 24A.1 [51-24A.1] et seq, Public Employees, State Employees, teachers, disclosure, release, public record) ** SEE: OPINION NO. 78-209 (1978) ** ** SEE: OPINION NO. 78-209 (1978) ** ** SEE: OPINION NO. 78-146 (1978) ** ** SEE: OPINION NO. 76-373 (1976) ** ** SEE: OPINION 79-011 (1979) ** ** SEE: OPINION NO. 79-011 (1979) **